**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                          |   |                              |
|--------------------------|---|------------------------------|
| **DORIS WINSTON**,       | * |                              |
| **Plaintiff**,           | * |                              |
| **v.**                   | * | **Case No.: PWG-17-2477**    |
| **STATE OF MARYLAND**, *et al.*, | * |                      |
| **Defendant**.           | * |                              |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

The State of Maryland and the District Court for Prince George's County, Maryland hired Doris Winston, an African American, as a contractual Drug Court Coordinator on April 16, 2008. Am. Compl. ¶¶ 4, 6. ECF No. 11. On July 2, 2012, "Winston's position was reclassified from Drug Court Coordinator to Problem Solving Courts Coordinator," *id.* ¶ 10, and on January 22, 2014, she "was notified that her position would be changed from 'contractual' to 'temporary,'" *id.* ¶ 20. Defendants terminated her employment on March 12, 2014. *Id.* ¶ 6. Believing that her reassignment from contractual to temporary and her termination, as well as one of her supervisors' treatment of her leading up to her termination, were discriminatory and retaliatory, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, Winston filed an EEOC Charge and then this lawsuit against Defendants. Compl., ECF No. 1; EEOC Charge, ECF No. 15-4.

Defendants have moved to dismiss or, alternatively for summary judgment, arguing that Winston's EEOC Charge was not timely with regard to most of the alleged conduct and she can

neither state a claim for discrimination, retaliation, or hostile work environment nor prevail on any of her claims. ECF No. 15.[1]   Winston's claims for discriminatory termination and hostile work environment are timely and sufficient to survive Defendants' Motion to Dismiss, and it is premature to consider a summary judgment motion.   Winston fails to state a claim for discrimination based on the change in her position, and any discrimination claim based on her supervisors' earlier treatment of her is untimely.   Additionally, she fails to state a claim for retaliation.   Accordingly, all claims but discriminatory termination and hostile work environment are dismissed.

## Background

As a Drug Court Coordinator, Winston's duties "included writing grants, monitoring budgets, preparing training requests, monitoring expenditures, and preparing statistical data reports," and she performed these duties "for the Drug Court and the Mental Health Court programs." Am. Compl. ¶ 6.  She reported to two supervisors and two judges, one of whom was Judge Patricia Lewis (who is Caucasian), a judge of the Mental Health Court. *Id.* ¶ 7. Winston "received satisfactory performance evaluations" through 2012. *Id.* ¶ 8.  In 2012, Judge Lewis added to Winston's workload, such as by directing Winston "to take over data entry duties for the SMART computer system," a task that Winston believed fell outside her job description and for which she believed her Caucasian colleague Joy Wilde was responsible. *Id.* ¶ 9.  "These additional duties unreasonably increased Plaintiff Winston's workload, and it was impossible for her to perform all SMART data entry duties in addition to her other numerous duties." *Id.*

---

[1] The parties fully briefed the motion.  ECF Nos. 15-1, 18, 21.  A hearing is not necessary.  *See* Loc. R. 105.6.

According to Winston, "Judge Lewis was not authorized to assign Plaintiff Winston new duties, including the case management duties." *Id.*

Winston alleges that "[b]eginning in 2012 and continuing through her termination, Judge Lewis regularly harassed, intimidated, and demeaned Plaintiff Winston," reprimanded her, "verbally attacked" her, and "publicly berated her," while treating other employees "in a respectful manner." *Id.* ¶ 11. Winston reported Judge Lewis's "discriminatory conduct," but it did not stop. *Id.* ¶ 13. Rather, in addition to other ongoing "harassment," in April 2013,

> Judge Lewis issued Plaintiff Winston a performance evaluation related to her work with the Mental Health Court for period from January 1, 2012 to December 31, 2012, which contained false criticism of Plaintiff Winston's performance and rated her performance as less than satisfactory in the majority of performance categories. Judge Lewis' evaluation of Plaintiff Winston falsely accused her of failing to perform duties related to the SMART case management program, including failing to process criminal intake and discharge data, even though Judge Lewis knew that Ms. Wilde was the data entry clerk responsible for data entry in the SMART system.

*Id.* ¶ 16; *see also id.* ¶ 13.

Months later, on January 22, 2014, Winston "was notified that her position would be changed from 'contractual' to 'temporary,'" which caused her to lose "benefits, including paid leave." *Id.* ¶ 20. She believes that hers was the only position to be reclassified. *Id.* Then, on March 12, 2014, Defendants terminated Winston's employment in a letter that "stated that she was being terminated for failure to perform her duties because there was a discrepancy in the SMART system and a number of clients were listed in the system even though their cases were closed and they should have been removed from the system." *Id.* ¶ 21. According to Plaintiff, the discrepancy occurred "because she and Ms. Wilde had been incorrectly instructed on how to close cases in the SMART system," and "Ms. Wilde, who was responsible for case management in the SMART system, was not terminated." *Id.*

**Rule 56 Affidavit**

Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, arguing that the exhibits they have attached to their motion show that, even if Winston can state a claim, the undisputed facts demonstrate that they are entitled to judgment as a matter of law. In response, Winston's attorney filed an affidavit pursuant to Rule 56(d). ECF No. 18-2.

Rule 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "[D]iscovery is appropriate when 'the main issue' is 'one of motive' and when 'most of the key evidence lies in the control' of the party moving for summary judgment." *Gorham v. Md., Dep't of Gen. Servs.*, No. ELH-17-2732, 2018 WL 3475446, at *7 (D. Md. July 19, 2018) (quoting *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014). For example, discovery is appropriate when a plaintiff must prove "'that she was fired because of discriminatory reasons,'" and any supporting "evidence [is] within the control of the [defendant]," such that "'[a]bsent discovery,' . . . the plaintiff lacked 'adequate access to this evidence, and therefore no way to shield herself from a premature summary judgment motion.'" *Id.* (quoting *McCray*, 741 F.3d at 484).

Plaintiff's counsel asserts that "Winston has no personal knowledge of communication between/among other parties and is not in possession of all documents retained by Defendants in their regular course of business," Aff. 1, and she needs this information to oppose Defendants' arguments regarding, *inter alia*, her "role in maintaining the SMART system" and the roles that

others played; the hiring of her replacement; and the reasoning for changing her position from contractual to temporary, *id.* at 2–4. Because Plaintiff has not had the opportunity to obtain evidence about Defendants' employment decisions and the motivating factors behind them— evidence entirely within Defendants' hands—, I will not consider Defendants' motion as one for summary judgment at this time. *See* Fed. R. Civ. P. 56(d); *McCray*, 741 F.3d at 484; *Gorham*, 2018 WL 3475446, at *7.

## Standard of Review

Pursuant to Rule 12(b)(6), a complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

> [A] complaint must "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). To this end, "while a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); *Twombly*, 550 U.S. at 555); *see also McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

*Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (alterations in *Nam*).

Although at this stage of the proceedings, I accept the well pleaded facts in Winston's Amended Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when reviewing a motion to dismiss, I "may consider . . . documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Accordingly, I will consider the EEOC Charge, which Defendants attached to their Motion to Dismiss, ECF No. 15-4, and which is integral to Winston's Amended Complaint, and the authenticity of which is undisputed. *See Sposato*, 2013 WL 1308582, at *2.

## Timeliness of EEOC Charge

A plaintiff must file a timely charge with the EEOC before he files suit in federal court, although "the timeliness of an EEOC charge is not a jurisdictional matter." *Underdue v. Wells Fargo Bank, N.A.*, 684 F. App'x 346, 347 (4th Cir. 2017) (citing *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014)). Rather, failure to file a timely EEOC charge is a basis for dismissal under Rule 12(b)(6) for failure to state a claim. *See id.* In Maryland, Title VII claims must be filed with the EEOC no later than 300 days after the alleged discriminatory or retaliatory conduct.[2] *See Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); *see also Nat'l*

---

[2] Of course, if a plaintiff claims retaliation for having filed an EEOC charge, he or she may allege retaliation for the first time in federal court, and the timeliness of the EEOC charge will not be relevant to the retaliation claim. *See Hunter v. Vilsack*, No. DKC-07-2655, 2010 WL 1257997, at *8 (D. Md. Mar. 26, 2010). But, where, as here, a plaintiff allegedly "faces retaliation and *then* chooses to file an EEOC complaint, there is little reason not to require her to

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("[T]he statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period.").

As noted, Defendants attached to their Motion to Dismiss Winston's EEOC Charge. ECF No. 15-4. Winston signed it on October 23, 2014, and the EEOC received it on October 28, 2014. *Id.* Therefore, any discrimination or retaliation claim based on conduct that occurred before January 1, 2014 is time barred. *See Williams*, 370 F.3d at 428; *Abdi*, 2016 WL 808775, at *4. Indeed, Winston admits that her allegations of earlier acts pertain only to her hostile work environment claim, for which earlier acts can be considered as part of a "continuing violation." Pl.'s Opp'n 15 ("Defendants argue that Ms. Winston's claims before December 27, 2013 are time-barred. ECF No. 15-1 at 12. However, all of Ms. Winston's claims are timely as part of her hostile work environment claim."). Accordingly, to the extent that she has pleaded discrimination claims based on acts occurring prior to January 1, 2014 for any purpose other than as support for her hostile workplace claim, they are dismissed. *See Underdue*, 684 F. App'x at 347; *Williams*, 370 F.3d at 428; *Abdi*, 2016 WL 808775, at *4.

## Sufficiency of Discrimination Claims
## (Termination of Employment; Change in Work Position)

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). To state a claim for a violation of this statute, Winston must allege that "[s]he was terminated or otherwise treated less favorably 'because of' [her]

---

exhaust her retaliation claim by including it in her EEOC charge," and "[t]herefore, the normal rules of exhaustion," including the requirement that a timely EEOC charge be filed, apply. *Id.* (quoting *Cherry v, Bealefeld*, No. CCB-08-1228, 2010 WL 917421, at *7 (D. Md. March 9, 2010)).

race." *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004) (quoting 42 U.S.C. § 2000e-2(a)(1)).  To do so, she can allege the elements of a *prima face* case: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC,* No. JKB–10–276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.,* 375 F.3d 288, 295 (4th Cir. 2004)).

Significantly, a plaintiff is "not required as a matter of law to point to a similarly situated . . . comparator [outside the protected class] in order to succeed on a race discrimination claim." *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 545 (4th Cir. 2003) (noting that in *Dennis v. Columbia Colleton Med. Ctr. Inc.*, 290 F. 3d 639, 648–49 n.4 (4th Cir. 2002), the Fourth Circuit held that a "plaintiff need not prove that she was better qualified than a successful applicant if other circumstantial evidence suggests discrimination"); *see also Mabry v. Capital One, N.A.*, No. 13-2059-AW, 2013 WL 6410983, at *2 (D. Md. Dec. 6, 2013) (noting that comparison to similarly situated employees "is the general rule" and not a "categorical requirement").  And, as noted, Winston need not plead a *prima facie* case to survive Defendants' Motion to Dismiss, although her "factual allegations must be enough to raise a right to relief above the speculative level."  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  That is, it must be plausible based on her factual allegations that she could prove her case.  *See id.*

Defendants argue that Winston fails to show how the comparators she identified were "comparable to her," when "their job functions and job titles (case managers, etc.) are different, and their work assignments are different (circuit court versus district court)."  Defs' Mem. 14. And they contend that she fails to allege that either the termination of her employment or "her

reclassification of employment status from 'contractual' to 'temporary' was based on race." *Id.* at 15.[3]

Termination of Employment

Winston counters that she "has pled that Ms. Wilde is a similarly-situated Caucasian employee." Pl.'s Opp'n 10. Not so. Winston alleges that she and Wilde held *different* positions—that Wilde was responsible for "oversee[ing] data entry . . . in the SMART computer system," whereas Winston was not. Am. Compl. ¶ 9. Indeed, Winston asserts that "[s]he alleged that Joy Wilde, a Caucasian, was a coworker whose primary duty was to 'oversee data entry including data entry into the SMART computer system, and *these were **not** a part of Ms. Winston's duties*.'" Pl.'s Opp'n 10 (quoting Am. Compl. ¶ 9) (emphasis added). Although Ms. Winston acknowledges that "Judge Lewis instructed Plaintiff Winston to take over data entry duties for the SMART computer system," the thrust of her discrimination claim is that she was held responsible for this data entry even though it was "not a part of [her] duties." Am. Compl. ¶ 9. According to Winston, "Jennifer Moore, Deputy Director, Office of Problem Solving Courts, informed Judge Lewis in April 2013 that Plaintiff *Winston was not responsible for these case management duties* and that *Judge Lewis was not authorized to assign Plaintiff Winston new duties*, including the case management duties." *Id.* (emphasis added). Thus, Wilde cannot serve as a comparator. *See Bell v. Univ. of Md. Coll. Park Campus Facilities Mgmt.*, No. PX-17-

---

[3] Defendants also argue that, even if she "could establish a *prima facie* case of race discrimination, the District Court had legitimate, non-discriminatory reasons for changing her position to temporary consistent with the other problem solving court employees and for terminating her." Defs.' Mem. 16. This argument supports their summary judgment, motion, however, *see* Defs.' Reply 2, and because I defer consideration of their summary judgment motion until after Plaintiff has had an opportunity to conduct discovery, I do not address it at this time.

9

1655, 2018 WL 3008325, at *8 (D. Md. June 14, 2018) ("Comparators need not be precisely equivalent in position to a plaintiff, but there must be sufficient similarity between them to allow appropriate comparison. *See Roberts v. Coffey*, Civil Action No. DKC 10-3359, 2012 WL 2000353, at *4 n.11 (D. Md. June 4, 2012); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ('[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel.'), *aff'd*, 553 U.S. 442 (2008).").

Yet, Winston alleges that it was she (an African-American), and not Wilde (a Caucasian), who was "terminated for failure to perform her duties because there was a discrepancy in the SMART system and a number of clients were listed in the system even though their cases were closed and they should have been removed from the system," even though it was Wilde, and not Winston, "who was responsible for case management in the SMART system." Am. Compl. ¶ 21. According to Winston, the stated reason was not a legitimate basis for termination "because she and Ms. Wilde had been incorrectly instructed on how to close cases in the SMART system by Information Technology staff member Janet Romsaas, Institute for Governmental Services and Research at the University of Maryland, causing the discrepancy," and therefore "Winston was not responsible for the discrepancy in case numbers." *Id.* She also claims that, while the data entry duties "unreasonably increased Plaintiff Winston's workload, and it was impossible for her to perform all SMART data entry duties in addition to her other numerous duties," *id.* ¶ 9, she "was meeting all legitimate expectations regarding her performance." *Id.* ¶ 22.

Certainly, Defendants argue that "[t]he only person responsible for closing cases in SMART was Ms. Winston," and they attach evidence in support of their position. Defs.' Reply 4 n.2 (citing Wilde Aff., ECF No. 21-1, as "confirming that Joy Wilde's duties did not include

closing cases in SMART and that Ms. Winston knew it was solely her job to do so" and Case Mgmt. Documentation & Filing Policy & Proc., ECF No. 15-2, at 35, as "confirming that 'The Mental Health Court's Coordinator [*i.e.*, Ms. Winston] is responsible for opening and closing cases through the SMART SYSTEM'" (emendation in Reply)); *see also id.* at 7 (same). But, this evidence is not properly before this Court at this time, as I am only considering Defendants' motion as a motion to dismiss, inasmuch as Winston has stated a legitimate need for discovery to enable her to meet the Defendants' summary judgment arguments. *See supra* pages 4–5. Consequently, accepting the facts as alleged in the Amended Complaint, as I must at this juncture, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), Winston was terminated for unsatisfactory performance of a task she should not have been required to perform, while the Caucasian person responsible for that task was not terminated. This claim is sufficient to give rise to an inference of discrimination based on Winston's race because if Winston substantiates these allegations, she plausibly could prove her case of discrimination. *See Coleman*, 626 F.3d at 190. Defendants' motion to dismiss the discriminatory termination claim is denied.

Change in Work Position

In contrast, Winston has not pled any facts suggesting that the change in her position from "contractual" to "temporary" was in any way related to her race. Accordingly, Winston's discrimination claim is dismissed insofar as it was based on that change in her position. *See* 42 U.S.C. § 2000e-2(a)(1); *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004).

**Sufficiency of Hostile Work Environment Claim**

The elements of a Title VII claim for hostile work environment are "(1) unwelcome conduct; (2) that it is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work

environment; and (4) which is imputable to the employer.'" *Boyer–Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.,* 648 F.3d 216, 220 (4th Cir. 2011)). Defendants challenge Winston's pleading of the second and third elements. Defs.' Mem. 17.

Ultimately, a plaintiff must clear a "high bar" to establish that the offensive conduct was sufficiently severe and pervasive:

> Intermittent acts of harassment are insufficient to establish that a hostile work environment is severe or pervasive. Indeed, Title VII does not mandate civility in the workplace. Further, a supervisor's strict management style or degree of supervision is not evidence of actionable harassment. However, a work environment can be considered hostile if it is "consumed by remarks that intimidate, ridicule, and maliciously demean the status of [a protected class]."

*Engler v. Harris Corp.,* 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) (citing *E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir. 2008)) (internal citations omitted). Thus, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (citations omitted). But, as noted, at this stage, Winston simply must include factual allegations that make it plausible that she is entitled to relief. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Iqbal*, 556 U.S. at 679.

Additionally, to plead that the environment is "sufficiently severe or pervasive," Winston must allege "not only that [s]he subjectively perceived h[er] workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Fox v. Gen. Motors Corp.,* 247 F.3d 169, 178 (4th Cir. 2001). To determine whether an environment is objectively hostile, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993))). For example, in *Strothers v. City of Laurel, Maryland*, 895 F.3d 317 (4th Cir. 2018), the Fourth Circuit concluded that the employer "significantly altered terms and conditions of Strothers' employment" by "chang[ing] Strothers' daily arrival time," when that time "was expressly bargained for by the employee and had a significant effect on the employee's decision to accept the job"; and also "chang[ing] the dress code as applied to Strothers, ... publicly humiliat[ing] her" and "institut[ing] a policy that forbid Strothers from leaving her desk, including to use the restroom, without specific approval." *Id.* at 331–32. The court reasoned that "a reasonable jury could find that the alleged harassment was a daily occurrence that pervaded numerous aspects of Strothers' employment." *Id.* at 332.

Winston insists that "the pervasiveness of a plaintiff's public humiliation where a supervisor constantly yelled and berated her contributes to a hostile work environment claim." Pl.'s Opp'n 16. She cites *Nesbitt v. Univ. of Md. Med. Sys.*, No. WDQ-13-125, 2013 WL 6490275, at *6 (D. Md. Dec. 6, 2013), in which this Court concluded that the plaintiff stated a claim for hostile work environment based on "the pervasiveness of [her supervisor] Venuto's alleged misconduct." There,

> Nesbitt has alleged that Venuto interrupted Nesbitt while she was speaking, "respond[ed] to [her] comments in a condescending manner," and yelled at her "in front of other staff members" on at least 12 separate occasions over an approximately one-year period. ECF No. 18 ¶¶ 16, 18. After she returned from a medical leave that allegedly resulted from her anxiety and stress caused by Venuto's behavior, Venuto continued "yelling, berating, and repeated[ly] interrupt[ing]" her and making "demeaning comments during staff meetings." *Id.* ¶¶ 25–26. Nesbitt alleges that the conduct occurred on "a weekly basis" during regular staff meetings and was often directed at other older female employees in addition to her. *See id.* ¶¶ 26, 31. Also, on at least two occasions, Venuto made comments to Nesbitt that a reasonable jury might objectively consider humiliating—telling her that her comments were "killing" him and accusing her

of looking at his butt—especially considering that both comments were made in the presence of Nesbitt's co-workers at staff meetings. *Id.* ¶¶ 17–18.

*Id.*

Winston contends that, as in *Nesbitt*, Defendants' actions were pervasive, and she identifies the following actions:

> Judge Lewis gave Ms. Winston the duties of her Caucasian coworkers in spring 2012 and August 2012. *Id.* at ¶ 9. Judge Lewis also publicly berated Ms. Winston on at least seven different occasions in summer 2012, August 2012, fall 2012, January 2013, and summer 2013. *Id.* at ¶¶ 11, 13, 14, 18. Judge Lewis habitually blamed Ms. Winston for her Caucasian coworkers' failures. *See id.* Judge Lewis also excluded Ms. Winston from luncheon meetings with the judges, even though law interns were permitted to attend the meetings. *Id.* ¶ 12. In or around April 2013, Judge Lewis falsely criticized Ms. Winston's performance through her 2012 performance review while Judge Hill gave Ms. Winston an excellent review. *Id.* at ¶¶ 16-17.

Pl.'s Opp'n 17. She also claims that she "was exceedingly distressed by Judge Lewis' abusive and humiliating treatment of her and had to seek medical treatment for emotional distress she experienced as a result of [one] meeting, and as a result, she was prescribed medication to treat depression." Am. Compl. ¶ 14.

Most of the actions Winston alleges (assigning her work formerly assigned to a Caucasian colleague, blaming her for "her Caucasian coworkers' failures," excluding her from luncheon meetings), even taken cumulatively, were not sufficiently severe or pervasive to give rise to a hostile work environment claim. Rather, these allegations describe normal work place events (e.g., assignments, meeting invitations) rather than adverse employment actions, or at most rude behavior unbecoming of a supervisor (e.g., misplaced blame) and therefore do not support a harassment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that the standards for judging hostility are meant to "ensure that Title VII does not become a 'general civility code' ") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

75, 81 (1998)). In contrast, publicly berating her seven times over the course of a year and falsely criticizing her performance in an evaluation that ultimately led to the termination of her employment—especially when considered cumulatively with the other actions, including habitual blame, and with the effects of these actions on Plaintiff—describe hostility that is sufficiently severe and pervasive to be both subjectively and objectively hostile and to clear the bar at this early point in the litigation. *See Strothers*, 895 F.3d at 331–32; *Sunbelt Rentals, Inc.,* 521 F.3d at 315; *Fox,* 247 F.3d at 178; *Engler*, 2012 WL 3745710, at *5; *see also Coleman*, 626 F.3d at 190.

Further, Winston alleges sufficiently that these acts were based on her race. Winston specifically references race in her allegations, claiming that, "[i]n contrast [to Judge Lewis's treatment of her], Judge Lewis spoke to Caucasian managers in a respectful manner and never publicly berated them or spoke to them in an insulting, demeaning, or patronizing manner." Am. Compl. ¶ 11. She also claims that "Judge Lewis was harassing her, unreasonably increasing her duties, and treating her in an aggressive, demeaning, and patronizing manner, while Judge Lewis treated Ms. Wilde [a Caucasian] respectfully and professionally." *Id.* ¶ 15. Additionally, she alleges that once, when a Caucasian colleague of hers "neglected her duties and neglected to follow up with a client, . . . Judge Lewis demanded Plaintiff Winston fix her Caucasian colleague's error and did not reprimand her Caucasian colleague." *Id.* ¶ 18.

This case is unlike *Hawkins v. PepsiCo, Inc.*, where the Fourth Circuit concluded that the employee's bare allegation that her supervisor "did not subject any of her white peers to similarly poor treatment" did not show the treatment "was due to race rather than [the supervisor's] admittedly low regard for [plaintiff's] individual performance." 203 F.3d 274, 281 (4th Cir. 2000). Here, Winston has alleged that another supervisor gave her a positive review for

the same period that Judge Lewis reviewed negatively, such that on these allegations, it is plausible that Winston's negative treatment was race-based, and unlikely that it was performance-based. And, unlike in *Causey*, 162 F.3d at 801, where there was "nothing about [the plaintiff's supervisor's] conduct [that] suggest[ed] it was based on [race or age]," here, the consistent differential in treatment between Winston and her Caucasian colleagues, without any legitimate explanation, suggests it was race-based hostility.

While conclusory statements that a plaintiff was treated differently because of race and "general statements of dissimilar treatment" are insufficient to show discrimination based on race, Winston has done more than this, identifying multiple specific instances of dissimilar treatment compared with various Caucasian colleagues. *See Gilliam v. S.C. Dep't of Juvenile Justice,* 474 F.3d 134, 142 (4th Cir. 2007). And, given that one way to show "race . . . based animosity" is through an employer's "differential treatment of similarly situated . . . employees [of another race]," *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998), Winston's allegations of Judge Lewis's treatment of a number of other Caucasians suffice at this stage to make it plausible that she treated Winston, as an African American, differently from many, if not all, Caucasian employees with whom she interacted. Although her hostile work environment claim may not survive summary judgment, it is sufficient at this stage to survive a motion to dismiss.

## Sufficiency of Retaliation Claim

The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). In Defendants' view, Winston fails to allege either the first or third element sufficiently. Defs.' Mem. 18–19.

The employer must be aware that the employee engaged in protected activity for a causal connection to exist. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 336 (4th Cir. 2018). "An employer is aware of an employee's protected activity when he learns of an employee action that he understood or should have understood to be opposition against a Title VII violation." *Id.* In *Strothers*, the employee's "informal memo . . . complained of both 'harassment' and a 'hostile environment,'" which the Fourth Circuit noted "can be considered terms of art." *Id.* The court noted that, "[j]ust as the terms should be understood, in certain contexts, to encompass sexual harassment, they should also be understood, in certain contexts, to encompass possible discrimination on the basis of other recognized protected statuses." *Id.* On that basis, it concluded that "[t]he City should have known that the alleged harassment and hostile environment pertained to racial discrimination given what it knew about [Strother's supervisor] and her relationship with Strothers," that is, that the supervisor had "wanted to hire someone of a 'different race'" than Strothers, and the director viewed "race [as] relevant to the harassment." *Id.*

Here, Winston claims that she "repeatedly reported Judge Lewis' harassing and *discriminatory* conduct to Judge Hill, Judge Thomas Love, and her immediate supervisor, Ms. Abrams," beginning when she " reported Judge Lewis' harassment and *discriminatory* treatment of her to Judge Hill in late 2012." Am. Compl. ¶ 13 (emphases added). She also claims that "[o]n January 4, 2013, Plaintiff Winston notified Judge Thomas Love, Administrative Judge for the District Court, that Judge Lewis was *singling her out* for abusive treatment, treating her *unfairly*, and subjecting her to public harassment." *Id.* ¶ 15 (emphases added). According to Winston, "Judge Love told her to bring her concerns to Ms. Abrams, and Plaintiff Winston reported Judge Lewis' abusive and *discriminatory* treatment of her to Ms. Abrams." *Id.*

(emphasis added). Specifically, "Plaintiff Winston told Ms. Abrams that Judge Lewis was harassing her, unreasonably increasing her duties, and treating her in an aggressive, demeaning, and patronizing manner, while Judge Lewis treated Ms. Wilde respectfully and professionally." *Id.* Accepting these allegations as true, Winston clearly reported that she believed that her supervisor was treating her differently from other employees, including one Caucasian employee in particular. And, her allegations that she reported "discriminatory conduct" and "discriminatory treatment," *id.* ¶¶ 13, 15, make it plausible that she made clear in one or more of her informal complaints that she believed the conduct was discriminatory.

But, Defendants did not change Winston's position from contractual to temporary until January 22, 2014, over a year after the most recent complaint she identifies, and they did not terminate her employment until March 12, 2014. This period of more than a year before the two adverse employment actions on which she could base a timely retaliation claim is, by far, "too long a period for Plaintiff to establish a causal relationship on temporal proximity alone." *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 485–86 (D. Md. 2015); *see also Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citation omitted); *Horne v. Reznick Fedder & Silverman,* 154 F. App'x 361, 364 (4th Cir. 2005) ("[A] lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'") (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *Philogene v. Data Networks, Inc.*, No. PWG-17-1318, 2018 WL 1014929, at *7 (D. Md. Feb. 21, 2018) (concluding that Court could not "infer causation where the only specifically alleged protected

activities occurred nine months or more before Mr. Philogene's termination"), *aff'd*, 728 F. App'x 214 (4th Cir. 2018).

In *German v. Akal Security, Inc.*, No. CCB-11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011), this Court concluded that a retaliation claim was subject to dismissal because there was "only [one] protected activity in the complaint with an identifiable date" and "only [one] subsequent adverse employer action cited with sufficient specificity." The Court reasoned that the "four-month gap [between the events] may be too long to provide a causal link between the two actions." *Id.* The Court also observed that the plaintiff's allegation that "her earlier demotion was 'a result of Plaintiff complaining of Defendants' discriminatory and retaliatory conduct,' ... lack[ed] sufficient information to infer causality through temporal proximity." *Id.*

Winston argues that, "[d]uring the pleading stage, the Fourth Circuit has found retaliation two years after the report of discrimination to be causally connected." Pl.'s Opp'n 14. She paraphrases *Williams v. Kettler Mgmt., Inc.*, No. CBD-12-1226, 2013 WL 398741 (D. Md. Jan. 31, 2013), but omits this Court's observation that, when there is no temporal proximity, there must be other facts to support finding a causal connection. *See Williams*, 2013 WL 398741, at *1. In *Williams*, the plaintiff filed an EEOC charge in March 2009 and was fired in July 2009; he started working for a new company in August 2009. *Id.* at *1. One of his new supervisors "implied" to him in October 2009, when his new employer began collaborating with his old employer, that he knew about Williams's EEOC charge. *Id.* His new employer terminated his employment less than two months later (but approximately nine months after his protected activity). *Id.* Williams sued both employers, and they moved to dismiss. *Id.*

The Court inferred causation, not because the second termination happened nine months after Williams's protected activity, but because it occurred within two months "from the

conversation in which Defendant indicated it was aware of Plaintiff's protected activity," which plausibly was the defendant's "first opportunity" to retaliate. *Id.* at *3. It reasoned:

> In a retaliation claim, causation can be inferred from a brief lapse of time between the protected activity and the adverse employment action. *Silva v. Bowie State Univ.,* 172 F. App'x 476, 478 (4th Cir.2006); *Pike v. Osborne,* 301 F.3d 182, 185 (4th Cir.2002). The Supreme Court has stated that if temporal proximity is the sole evidence of causation, the time must be "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). However, the Court there was reviewing a motion for summary judgment, and here discovery may produce additional evidence of causation. At the pleading stage, the Fourth Circuit has considered lapses of one to two months as sufficient, and up to two years where the defendant retaliated "at the first opportunity" in a failure to rehire case. *See Templeton v. First Tennessee Bank, N.A.,* 424 F. App'x 249, 251 (4th Cir.2011) (finding two year lapse sufficient where plaintiff resigned after complaining of discrimination but sought to be rehired two years later); *Silva,* 172 F. App'x at 478 ("Because the burden of establishing a prima facie case is not onerous we find that the ten week lapse of time sufficiently established a prima facie case of retaliation.") (internal quotations omitted); *Pike,* 301 F.3d at 184–85 (drawing an inference of causation from a temporal lapse of one month).

*Id.*

Thus, causation may be present when more than one or two months have passed, but only where there are additional facts to establish the causal connection, beyond the timeline of events. *See id.*; *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). "Courts may look to the intervening period for other evidence of retaliatory animus," which may "be sufficient to satisfy the element of causation." *Id.* (citation omitted). Indeed, after Winston's January 2013 complaint and before the March 2014 termination of her employment, Judge Lewis gave her a "falsely" negative performance evaluation in April 2013. Am. Compl. ¶ 16. The shortcomings mentioned in that evaluation—that Winston was "failing to perform duties related to the SMART case management program, including failing to process criminal intake and discharge data," *id.* ¶ 16,—were the same ones that formed the stated basis for her termination—her "failure to perform her duties" to remove clients from the SMART system when their cases were closed, *id.*

¶ 21.   Thus, as "other evidence of retaliatory animus," this action could "satisfy the element of causation."  *See Lettieri,* 478 F.3d at 650.  Yet, even this event was three months after Plaintiff's complaint, which is too late for temporal proximity to provide much inference of causation. *See Horne,* 154 F. App'x at 364.  And, Winston has not alleged any specific acts whatsoever between January and April 2013.

Winston insists generally that "Judge Lewis' harassment of Ms. Winston increased after she reported Judge Lewis' conduct" and that, in the intervening period, in addition to the poor performance evaluation, "Judge Lewis publicly berated Ms. Winston and accused her of not completing her own work" and "regularly blamed Ms. Winston for her coworker's errors and publicly reprimanded her."   Pl.'s Opp'n 14–15 (citing Am. Compl. ¶¶ 13–19).   But, a comparison of the alleged actions against Plaintiff in this case both before and after the protected activity does not show an increase.  In early 2012, before Winston's informal complaints, Judge Lewis "instructed Plaintiff Winston to take over data entry duties from the SMART computer system," thereby "unreasonably increas[ing] Plaintiff Winston's workload," and "Judge Lewis again increased Plaintiff Winston's duties in August 2012." *Id.* ¶ 9.  And, she was assigned additional duties when Defendants reclassified her position in July 2012. *Id.* ¶ 10.  Additionally, Winston alleges that "[b]eginning in 2012 and continuing through her termination, Judge Lewis regularly harassed, intimidated, and demeaned Plaintiff Winston," including by "publicly berat[ing]" her in Summer 2012, "verbally attack[ing] Plaintiff Winston in front of court personnel" in Fall 2012, and excluding her from lunch meetings beginning in August 2012. *Id.* ¶¶ 11–12.  The employment actions that preceded the informal complaints against Judge Lewis cannot, by definition, be retaliation for having done so. *See Hall v. Greystar Mgmt. Servs., L.P.,*

637 F. App'x 93, 98 (4th Cir. 2016). Accordingly, whatever Judge Lewis's motivation for initiating them, it could not have been retaliatory. *See id.*

Further, perhaps with the exception of the 2012 performance evaluation three months later, the alleged actions that followed her informal complaints were not of a frequency or nature sufficient to distinguish them from the pre-complaint acts—which could not have been taken with retaliatory animus. For this reason, the post-complaint conduct is sufficiently similar to the pre-complaint conduct to preclude an inference that it was the product of retaliatory intent. Moreover, the pleadings focus on the alleged racial bias animating the actions, suggesting that retaliation was not a "but-for cause" of the actions. *See Univ. of Tex. Sw. Med. Ctr. v. Nasser,* 570 U.S. 338, 362 (2013) (holding that "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). Thus, the facts do not sufficiently allege any causal connection between the January 2013 informal complaint and the alleged adverse employment actions to bring Winston's right to relief on his retaliation claim "above the speculative level." *See Coleman*, 626 F.3d at 190; *Lettieri*, 478 F.3d at 650. Accordingly, Winston's retaliation claim is dismissed.

## **ORDER**

Accordingly, it is, this <u>5th</u> day of <u>November</u>, <u>2018</u>, hereby ORDERED that

1. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 15, treated as a motion to dismiss, IS GRANTED IN PART AND DENIED IN PART as follows:

   a. Defendants' motion IS DENIED as to Plaintiff's discriminatory termination claim and her hostile work environment claim;

   b. Plaintiff's discrimination claim otherwise IS DISMISSED; and

     c.   Plaintiff's retaliation claim IS DISMISSED; and

2.   Defendants' Answer is due November 26, 2018.


_____/S/_____
Paul W. Grimm
United States District Judge

lyb